**EXHIBIT A**

July 22, 2026

**SUBMITTED VIA THE FOIA.GOV PORTAL**

FOIA Requester Service Center
U.S. Department of Energy
1000 Independence Avenue SW
Washington, DC 20585
(submitted via FOIA.gov)

**Re: FOIA Request: Records of Michael F. Wehner, Lawrence Berkeley National Laboratory, concerning the discussion of the discredited RCP 8.5 as a business-as-usual or reference scenario**

Dear FOIA Officer:

I write on behalf of Government Accountability & Oversight ("GAO"), a non-profit public-policy organization dedicated to transparency in government, with an active public dissemination and media program. Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, GAO requests copies of the records described below. This request is submitted through the FOIA.gov portal. FOIA requires that, upon any request that "reasonably describes" the records sought, the agency "shall make the records promptly available to any person." § 552(a)(3)(A).

This request concerns records of Lawrence Berkeley National Laboratory ("LBNL"), a Department of Energy Office of Science national laboratory operated by the University of California under contract with the Department. The Department directs that requests for laboratory records be made to the Department rather than to the contractor, and this request accordingly seeks all responsive records in the Department's possession or control, including records held or maintained on the Department's behalf by its management and operating contractor for LBNL. If another DOE office, such as the Office of Science FOIA office serving the Berkeley Site Office, is the proper recipient, please route this request there and so advise me.

**1. The records requested.**

All email messages sent or received by Michael F. Wehner, Senior Scientist, Applied Mathematics and Computational Research Division, LBNL, between March 1, 2026 and July 21, 2026, inclusive, that satisfy both of the following conditions:

> (a) The message contains, anywhere in the sender or recipient fields, the subject line, the message body, or any attachment, at least one of these terms: (i) "NASEM"; (ii) "attribute"; (iii) "attribution"; (iv) "RCP 8.5"; (v) "RCP8.5"; (vi) "business as usual"; (vii) "BAU", as a freestanding term; or (viii) "reference scenario"; *and*

(b) The message also contains, anywhere in those same locations, at least one of these terms: (i) "Burger"; (ii) "Sabin"; (iii) "Edling"; (iv) "Merner"; (v) "Heede"; (vi) "Wiles"; (vii) "Worthington"; (viii) "@climateintegrity.org"; or (ix) "climate accountability".

This request includes all attachments and the full transmission data showing sender, all recipients, date, and time. The quotation marks and separating semicolons above are not part of any search term; they only enclose and separate the terms. Searches should be run without regard to capitalization. Please treat exact duplicates as non-responsive, so that your office need process only one copy of each responsive record.

To further narrow this request, please exclude as non-responsive, and set aside from processing, records that fall into any of the following categories:

(a) records sent to broad distribution lists, for example emails from an address beginning with info@, media@, or press@;

(b) records that do not name any custodian identified in this request as the sender or as a direct or copied recipient;

(c) correspondence that merely receives newsletters, press summaries, or "clippings," such as news services, stories, or opinion pieces, from the original source;

(d) subscription emails sent from an external party to the named custodian or custodians;

(e) attachments that are draft documents, while still producing the parent email;

(f) automatically generated emails not sent by a named individual, for example out-of-office replies; and

(g) published or docketed materials, for example pleadings, regulatory comments, ECF notices, news articles, and newsletters, unless forwarded to or from a named custodian with substantive commentary added by the sender.

**2. The search should include archived, backup, and separated-employee accounts.**

The search should cover not only Dr. Wehner's current, active email accounts and files at LBNL, but also any archived or backup email accounts and any accounts preserved under applicable DOE or contractor records-retention schedules. If Dr. Wehner separates from the laboratory before this request is complete, the records remain subject to FOIA as records in the Department's possession or control.

In responding, the agency "shall make reasonable efforts to search for the records in electronic form or format." § 552(a)(3)(C). If any responsive record has been deleted or destroyed, GAO requests that the agency identify the record, state the records-disposition authority under which it was destroyed, and state whether the record was subject to any litigation hold or preservation obligation at the time.

**3. The records should be produced in native, searchable, electronic form.**

GAO requests the records in native electronic format, including attachments and full transmission data showing sender, all recipients, date, and time. FOIA is explicit: an agency "shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." § 552(a)(3)(B). Email records maintained on agency systems are readily reproducible in native electronic form. If any responsive record exists only in hard copy, please provide copies.

**4. Withholding is permitted only under the foreseeable-harm standard, and all segregable material must be released.**

The FOIA Improvement Act of 2016 forbids reflexive withholding. An agency may withhold information "only if" it "reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)" or disclosure is prohibited by law, § 552(a)(8)(A)(i), and it must "take reasonable steps necessary to segregate and release nonexempt information." § 552(a)(8)(A)(ii)(II). The statute likewise commands that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." § 552(b). For each record withheld in whole or in part, please identify the record, the exemption claimed, and the foreseeable harm; any notification of denial must also "set forth the names and titles or positions of each person responsible for the denial." § 552(a)(6)(C)(i).

GAO notes its right to appeal any adverse determination within a period of not less than ninety days, § 552(a)(6)(A)(i)(III)(aa), and to seek dispute-resolution services from the agency's FOIA Public Liaison or the Office of Government Information Services. On judicial review, the court determines the matter de novo and "the burden is on the agency to sustain its action." § 552(a)(4)(B). A complainant who has "substantially prevailed," including through "a voluntary or unilateral change in position by the agency," may recover attorney fees and litigation costs. §§ 552(a)(4)(E)(i), (ii)(II).

**5. The statutory deadline is twenty working days.**

The agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request" and immediately notify the requester of "such determination and the reasons therefor." § 552(a)(6)(A)(i). Any extension for unusual circumstances requires written notice "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched," and "[n]o such notice shall specify a date that would result in an extension for more than ten working days." § 552(a)(6)(B)(i). If the agency misses these deadlines, GAO is deemed to have exhausted its administrative remedies. § 552(a)(6)(C)(i).

**6. GAO is a news-media requester and, in the alternative, requests a public-interest fee waiver.**

GAO requests classification as "a representative of the news media," which limits fees to reasonable standard charges for document duplication alone. § 552(a)(4)(A)(ii)(II). The statute defines that term as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* That is precisely what GAO does: it gathers information about government operations, including through public records requests, turns it into distinct published reports, articles, and commentary, and distributes those works to the public through its website, https://govoversight.org, and through online and national print publications that cite its work.

In the alternative, GAO requests a waiver or reduction of all fees. Documents "shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." § 552(a)(4)(A)(iii). Both prongs are satisfied, as Part 7 explains: the records bear directly on the operations of the federal climate-assessment apparatus, and GAO, a non-profit recognized under section 501(c)(3) of the Internal Revenue Code, has no commercial interest in them. These two requests are independent; if either is denied, please address each separately and state the reasons. GAO also notes that an agency "shall not assess any search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees)" if it "has failed to comply with any time limit under paragraph (6)." § 552(a)(4)(A)(viii)(I). If fees are nonetheless assessed, GAO is willing to pay up to $250.00; please provide an itemized estimate before exceeding that amount.

**7. The records concern a matter of significant public interest.**

Although FOIA grants access without regard to the requester's purpose, the public interest here is worth stating. The records concern the use of the RCP 8.5 emissions scenario, a high-end pathway that even its former champions now acknowledge to be implausible, as a central framing scenario for the Fourth National Climate Assessment, the federal report that supplies much of the scientific basis for climate regulation and litigation. How and why taxpayer-funded officials presented an implausible scenario as "business as usual," and whether anyone outside these institutions influenced or coordinated that choice, are questions of national media attention, scientific dispute, congressional oversight, and active litigation. GAO is a non-profit organization recognized under section 501(c)(3) of the Internal Revenue Code. It seeks these records for no commercial purpose, publishes its findings at https://govoversight.org, and intends to disseminate broadly the public information obtained under this request. Disclosure will therefore contribute to the understanding of the public at large, not merely that of GAO.

**8. Conclusion.**

Please direct all correspondence concerning this request to me through the portal or at the email address below. Thank you for your prompt attention.

Respectfully submitted,

Joe Thomas
Joe@govoversight.org
Government Accountability & Oversight
30 N. Gould Street, #12848
Sheridan, WY 82801
(434) 882-4217